# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| DERRICK S. JONES<br>    LA. DOC #379679<br>    OPCC #2006969<br>VS. | CIVIL ACTION NO. 09-0292<br><br>SECTION P<br><br>CHIEF JUDGE JAMES |
| SHERIFF ROYCE TONEY,<br>ET AL. | MAGISTRATE JUDGE HAYES |

<u>**REPORT AND RECOMMENDATION**</u>

*Pro se* plaintiff Derrick S. Jones, proceeding *in forma pauperis*, filed the instant civil

rights complaint pursuant to 42 U.S.C. §1983 on February 20, 2009. Plaintiff is an inmate in the

custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated

at the Ouachita Parish Corrections Center (OCC), Monroe, Louisiana and he complains of

conditions of confinement at that institution. He sues Ouachita Parish Sheriff Royce Toney and

OPCC Warden Brian Newcomer. He prays for compensatory damages and injunctive relief and

seeks to have the complaint certified as a class action. In a separate pleading filed on April 28,

2009 plaintiff requested "emergency relief" – an order directing OCC to replace funds in his

inmate account, an order granting him more access to the OCC law library, and the appointment

of counsel to assist him in the litigation of these claims. [rec. doc. 6] On May 7, 2009, that

pleading was dismissed and plaintiff was ordered to amend his complaint to provide more

specific information. [rec. docs. 7 and 8] Thereafter, on May 27, 2009, plaintiff filed another

Motion to Appoint Counsel [rec. doc. 9] and a Motion for Preliminary Injunction. [rec. docs. 9

and 10] On June 9, 2009 plaintiff filed an amended complaint and various exhibits. [rec. doc. 11]

On the same date he again requested appointment of counsel to assist him in the litigation of

these claims. [rec. doc. 12] On June 19, 2009, plaintiff filed a Motion for Temporary Restraining Order. [rec. doc. 13] On June 19, 2009, the Court denied his motion. [rec. doc. 14] Finally, on July 13, 2009 plaintiff filed yet another Motion for Temporary Restraining Order. [rec. doc. 15]

Plaintiff's complaint, amended complaint, and the various pending motions have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint, amended complaint, motions for preliminary injunction or temporary restraining order, and any and all other pending pleadings or motions be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous.

### Statement of the Case

### 1. Original Complaint and Memorandum in Support [rec. docs. 1 and 1-3]

### a. Overcrowding

Plaintiff is an inmate in the custody of the LDOC; he is also awaiting trial on additional charges and, according to plaintiff's latest filing, the trial is scheduled for sometime in August 2009.[1]

In his original complaint and its accompanying memorandum, plaintiff alleged that OCC, which was designed to house 850 inmates, was, at the time the complaint was filed housing 1250 inmates. According to plaintiff, as a result of this overcrowding, he was being denied sufficient

---

[1] In 2004, plaintiff was convicted of four counts of second degree kidnapping and sentenced to serve sentences totaling 45 years at hard labor. His convictions and sentences were ultimately affirmed. See rec. doc. 6, p. 1; see also *State v. Jones*, 41,672 (La.App. 2 Cir. 2/28/07), 954 So.2d 187, writ granted, judgment vacated and case remanded, 2007-0790 (La. 4/25/2008), 979 So.2d 1272, case remanded to trial court, 41,672 (La. App. 2 Cir. 9/17/2008), 999 So.2d 1152, affirmed following remand, 41,672 (La. 1/14/2009), 999 So.2d 1156.

Plaintiff has been returned to OPCC and is awaiting trial on unspecified "capital charges that could end in ... petitioner receiving a life sentence and/or additional time as well." [rec. doc. 6, p. 1]

nutrition and clothing. He also complained that he is an indigent inmate and that when his funds are depleted, he must go without hygiene supplies for "weeks."

### b. Medical Care

Plaintiff also complained that he has submitted numerous dental related "sick calls." In October 2008 he was examined by a dentist who referred him to an oral surgeon. In November 2008 plaintiff was sent to Forcht-Wade Corrections Center where he was examined by another dentist. This dentist likewise recommended extraction of plaintiff's wisdom teeth and referred plaintiff to the LSU Medical Center in Shreveport for oral surgery. As of January, plaintiff had not yet had his dental problems addressed and he complained of pain. He also complained that his grievances had not yet been addressed.

### c. Access to Courts

Plaintiff also complained that he and his fellow inmates have "inadequate opportunities ... to access the courts" because the prison law library has few books and no law books. Plaintiff sought to check out a copy of the "Criminal Code of Procedure" but was told by inmate counsel that inmates were not allowed to check out books. Plaintiff filed a grievance and Lt. Kinnard replied stating that all of the law books had been burned. Kinnard also told plaintiff that since he was represented by an attorney, he was not entitled to any other form of access to the courts.

### d. Religion

Plaintiff also complained that while OPCC offers religious services for Jehovah's Witnesses and Baptists they offer nothing related to plaintiff's chosen religion, which he chose not to identify.

### e. Diet

Plaintiff complained that the facility does not employ a dietician. He also complained that the facility uses 4 inch ladles and not 8 inch ladles and that the portions of food are inadequate. He complained that the corrections officers are provided different meals and that the inmates do not receive catfish, peach cobbler, and Kool Aid. He complained that the "... State or taxpayers are paying for the inmate's and not for the staff personal enjoyment."

### f. Interference with "Legal Mail"

Plaintiff also complained that on August 10, 2008, Warden Newcomer, Lt. Steward, and Corporal Manning removed some of plaintiff's legal documents – legal mail, notarized affidavits, dockets, etc. – from plaintiff's cell. Plaintiff argues that he needed these documents to prove his innocence on pending charges. The corrections officers advised that the papers posed a fire hazard.

Plaintiff complained that on November 17, 2008, he received "legal mail" from his appeals lawyer and the envelope was unsealed.

Plaintiff alleged that he is representing himself; however, he also acknowledged that an attorney was appointed to represent him. He claimed that his court-appointed attorney was doing nothing to represent him. Plaintiff made reference to exhibits A-E; however, no such exhibits were attached to his complaint or memorandum.

### g. Grievances

Finally, plaintiff alleged that staff members intentionally prevent his grievances from reaching the warden. He also complained that he has experienced difficulties submitting his *in forma pauperis* application because the prison accountant will not execute his account sheet.

## 2. Emergency Motion [rec. doc. 6]

On April 28, 2009, plaintiff filed a "Motion to Seek Emergency Relief." Plaintiff alleged that the law library was inadequate and that he had little or no access to the few legal materials that are available. He claimed that he is charged with a capital offense and faces a potential life sentence. He also complained that he was denied proper legal materials in 2004 at the time of his conviction and that his conviction resulted from the inadequate law library.

He also alleged that on April 15, 2009, and April 16, 2009, he received two $20 money orders from his family. He sought to purchase unspecified "legal supplies" to respond to a letter he received from "Practice Assistance Counsel" in New Orleans; however, the accounts officer had taken all but 54¢ out of his account and submitted that amount to the Clerk of Court to defray court costs in the instant suit. He claimed that in so doing, the accounts officer violated this court's policy which mandates applying only 20% of the inmate's previous month's income to court costs. Plaintiff requested the return of his money, access to the law library, and appointment of counsel.

On May 7, 2009, the undersigned denied plaintiff's motion for emergency relief and motion to appoint counsel.

## 3. Memorandum Order [rec. doc. 7]

On May 7, 2009, the undersigned completed an initial review of the pleadings, identified various deficiencies, instructed plaintiff on the applicable law, and directed him to amend his complaint to provide specific information. Plaintiff was instructed as follows: "... precisely state what **EACH DEFENDANT** did to violate his constitutional rights with respect to the conditions and circumstances alleged and further, he shall state with specificity the nature and extent of the

prejudice, harm, or injuries he claims to have sustained as a result of the alleged constitutional violations. Further, he should provide facts to establish deliberate indifference with respect to each defendant..." [rec. doc. 7]

### *4. Second Motion to Appoint Counsel and Motion for Preliminary Injunction [rec. docs. 9-10]*

On May 27, 2009, plaintiff filed another Motion for Appointment of Counsel and a Motion for a Preliminary Injunction. Therein he alleged that he was being denied access to the law library and to law books; that he was being denied adequate recreation because he has been refused "sneakers;" that he has been denied adequate medical attention; that he has been exposed to unsanitary conditions and inadequate nutrition and cold meals; that he has been provided inadequate hygiene materials; and that he has been denied "legal copies" which he needs "... to be on one accord with my lawyer and the courts." He reasserted his desire for appointment of counsel suggesting that he is unable to properly litigate these claims.

### *5. Amended Complaint [rec. doc. 11]*

On June 9, 2009, plaintiff filed an amended complaint. He again requested appointment of counsel and provided the following allegations in response to the previous amend order.

Plaintiff claimed that he was arrested on December 28, 2009,[2] on charges of second degree murder, armed robbery, aggravated burglary, and four counts of second degree kidnapping, and that he filed a motion for speedy trial on June 22, 2005. He ultimately went to trial on the kidnapping charges, was found guilty, and sentenced to serve 45 years. According to plaintiff, if he would have had access to an adequate law library during this time, he could have forced the state to try him on ALL of the charges, and he could have corresponded with the

_____

[2] Plaintiff is obviously confused concerning the dates of his arrest, trial, and convictions.

Attorney Disciplinary Board who would have forced his attorney to "do his job." In other words, had plaintiff been afforded access to an adequate law library when he was awaiting trial on the kidnapping charges, he "... wouldn't be here right now..."  According to plaintiff, he won his appeal on the kidnapping charges and obtained a "stamped letter from Governor Bobby Jindal on April 30, 2008..." ordering his release.[3]  He claims that because the Fourth Judicial District Court failed to honor his right to speedy trial he was returned to OCC and booked for the detainer on the other charges mentioned above.  Plaintiff claimed, "I continue to suffer injury by remaining in jail due to not having no law library nor a public defender that has my best interest at heart. Petitioner have wretten [sic] up my public defender for not representing me to the best of his ability." [rec. doc. 11-2, pp. 1-2]

Plaintiff then complained that OCC does not allow inmates to "have any legal copies." Plaintiff then referred to a series of grievances and responses concerning his legal mail and access to a notary. [rec. doc. 11-2, pp. 2-5] Plaintiff concluded his amended complaint as follows, "By plaintiff not being able to get copies it's hindering plaintiff from access to courts and as well as communicating with my lawyer and courts because I will have to send out my only copies that I might not get back. It would be needlessly serve an [sic]  to require inmates to copy all documents by hand. Litigation necessary requires some means of accurate duplication because the court and the parties need to refer to the same documents. Photocopying is a reasonable means of providing the necessary copies, also some legal documents can't be hand written only photocopying. I would like to be on one accord with my lawyer and the courts. By me not being

---

[3] The published jurisprudence of the State of Louisiana suggests *otherwise. See fn 1, supra*. Plaintiff's convictions and sentences were ultimately affirmed on appeal. *See State* v. Jones, 41,672 (La. App. 2 Cir. 1/14/2009), 999 So.2d 1156.

able to send any copies to my lawyer I keep getting delayed on my court appearance because we are not on the same page." [rec. doc. 11-2, p. 5]

Plaintiff also provided the following copies of administrative remedies procedure (ARP) grievances and the response provided by prison administrators. [rec. doc. 11-2, pp. 6-22]

1. Grievance dated 3-26-2009 – in which plaintiff complained of inadequate clothing, hygiene supplies, food, medical treatment, exercise, law library and unsanitary showers and the failure of the administration to use bleach when laundering the prisoner's clothes. [rec. doc. 11-2, pp. 6-9] The administration responded to the grievance on May 19, 2009, stating, "Mr. Jones, we are unable to issue incoming inmates new clothing due to budget issues. The indigent policy at OCC has been in place for years and seems to be working fine. I have spoke with food service and they assured me that your accusations are untrue. As far as medical goes, I do not know why you can't go see the dentist if you are filling out sick calls. Our law library policy is not a problem with other inmates and I do not see it changing." [rec. doc. 11-2, p. 6-9]

2. Grievance dated February 2, 2009, directed to Warden Newcomer in which plaintiff stated, "I'm writing you due to the fact that I'm trying to get some copies of some legal mail." The prison administrator's response, dated February 5, 2009, was, "Mr. Jones the parish has a 1.2 million dollar deficit. You must write several copies and then mail your legal work." [rec. doc. 11-2, p. 11]

3. Grievance dated May 6, 2008, in which plaintiff asserted, "... I've been trying to get the rest of my legal mail back that was taken which you said I can have my legal mail some of it anyway. Sir, would you please have your officers to find the rest of my legal mail so that I can work on my case." In a response dated May 7, 2008, Warden Newcomer stated, "Lt. Robinson

and I went through all of your mail the day you came in and you got all of your legal mail.  I assure you once any mail comes in for you, I will see to it that you get it.  Have your family contact Angola for any legal mail they have not sent to you." [rec. doc. 11-2, pp. 12-13]

4. Grievance dated August 10, 2008, complaining that jail authorities have refused to notarize "legal mail." In a response dated August 11, 2008, a corrections officer noted, "I spoke with Sgt. Davis this morning of 8/11/08 and he said he would see you sometime today." [rec. doc. 11-2, p. 14]

5. Grievance dated February 17, 2009, in which plaintiff complained that despite repeated requests he had received no response from "the Notary Public Officer here to have my legal mail notarized..." In a response dated February 18, 2009, the corrections officer noted, "We do not have a State Notary employed here at O.C.C. The authority we have to notarize is Sheriff's Office paperwork only.  It is up to you to make arrangements for an independent Notary to come to O.C.C. to notarize your paper work." [rec. doc. 11-2, p. 15]

6. Grievance dated November 6, 2007, in which plaintiff asserted, "I received a letter from C. Fondren stating that she's not a bank and that I can't send my money my family sent me home for my legal matters for court which is her job. However if this can't be resolved I am going to contact the Sheriff's Office's Court of Appeals and the Internal Affairs Office." In a response dated November 8, plaintiff was advised, "Sir. Dy. Fondren is in charge of inmate accounts. The answer she gave you is probably the correct answer. If you wish,  you have the option of rejecting this A.R.P. in order to receive responses to your complaint at a different level." [rec. doc. 11-2, p. 16] A second response dated November 9 and 13, 2007, stating, "You may have someone come up here and sign for and receive your money if you want to. We do not

send it to anyone..." and, "Our policy forbids us to send all of an inmate's money out. Some must stay here for his possible needs. Policy states we can send 80% of your balance. That amounts to $66.00. You should ask those who send you money to send it to Ms. Jones to handle your affairs." [rec. doc. 11-2, p. 17]

7. Grievance and attachment dated November 8, 2007, addressed to Dy. Fondren, the corrections officer in charge of inmates accounts which explains his need to send $500 to the Court Reporter in order to obtain a copy of the transcript of jury selection. [rec. doc. 11-2, pp. 18-19]

8. Grievance dated November 17, 2008, apparently complaining about "opening legal mail" and responses by prison staff as follows: (a) Response dated November 19, 2008, by Cpl. Beard, "Mr. Jones I have spoken to you on this matter. Your complaint will be looked into." (b) Response dated November 20, 2008, by Dy. Rosatte, "Mr. Jones this is my writing. As you can see I wrote in red where you are housed and your middle initial and that this was legal mail. I looked at your DOC# to determine which Derrick Jones this belonged to. I did not open your legal mail. If I had opened this I would have used a letter opener and slit the top of the envelope which I did not." (c) Response dated November 20, 2008, by Lt. Stewart, "Sir I will try to find out who open your legal mail. I will check with the shift that was working." (d) Response dated November 22, 2008, by Captain Murray [sic], "Derrick, I waited to get an answer from all deputies that handled your mail that day. No one opened your mail; according to Lt. Stewart he talked to 3 deputies and one corporal. We take mail very serious so please write me personally if something happens again." [rec. doc. 11-2, p. 21]

*6. Motion to Appoint Counsel [rec. doc. 12]*

On June 9, 2009, plaintiff filed another Motion for Appointment of Counsel.

**7. Motion for Temporary Restraining Order [rec. doc. 13]**

On June 17, 2009, plaintiff filed a motion for temporary restraining order prohibiting the defendants from "... denying access to the courts by stopping police reports etc. coming from my family keeping my personal mail and or giving it to one of the other inmates here with my name, opening and reading my legal mail, not having any type of law books nor access to law books or law library for research purposes. Denial of any type of sneakers for recreation purposes. Unsanitary practices for not cleaning showers or providing Purex Bleach or adequate disenfected to clean showers with or our dirty clothing." Plaintiff also asked for an adequate grievance system.

On June 19, 2009, the Court denied the motion having determined that plaintiff "... failed to allege facts sufficient to show that there is a substantial threat that he will suffer irreparable harm if the injunction is not granted..." [rec. doc. 14]

**8. Motion for Temporary Restraining Order [rec. doc. 15]**

Finally, on July 13, 2009, plaintiff filed yet another motion for temporary restraining order alleging that officers at the prison had lost valuable legal documents when they conducted a "shake down" of plaintiff's cell and locker on July 9, 2009. According to plaintiff, after the "shake down" he discovered that the following documents were missing: "... all of his research material for his case, his ruling from the 2nd Circuit Court and the Louisiana Supreme Court, his law cases, motion to discovery, witness information and statement..." Plaintiff also complained that various corrections officers acted in a manner "... very unbecoming to inmates..." He complained that the ARP system is deficient and that he fears retaliation from "renegade

officers." Plaintiff requested an immediate hearing and an order restraining the defendants from

"... retriev[ing] all my legal mail A.S.A.P. and fix the administrative remedy procedure..."

***Law and Analysis***

*1. Appointment of Counsel*

Plaintiff continues to request appointment of counsel to assist him in litigating his claims. [rec. docs. 9, 12] As noted above, plaintiff's initial requests for appointment of counsel were denied by the undersigned on May 7, 2009. [rec. doc. 8] His pending requests for appointment of counsel add nothing new to the inquiry, and therefore, for the reasons previously provided, plaintiff's pending motions for appointment of counsel should be again denied.

*2. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Plaintiff's complaint, his amended complaint, and the various motions he has filed allege

facts sufficient to conduct and conclude a preliminary screening pursuant to §1915. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that each of his complaints and all of his pending motions are frivolous.

### 3. Conditions of Confinement

In his original complaint plaintiff alleged that OCC is overcrowded – that the facility, which was designed to house 850 inmates, houses 1,250 prisoners. He also complained that he has been denied adequate nutrition because the facility does not employ a dietician; because prisoners are served inadequate portions of food by the food servers who use 4 inch ladles and not 8 inch ladles, and because prisoners are not served catfish, peach cobbler and Kool-Aid. He also complained of inadequate clothing, and hygiene supplies. [rec. docs. 1 and 1-3]

In subsequent pleadings he alleged that he was denied adequate recreation opportunities because the prison refused to provide free "sneakers." He complained of unsanitary conditions in general, the denial of sufficient hygiene supplies, and again of inadequate nutrition and cold meals. [rec. docs. 9-10]

In exhibits tendered with his amended complaint [rec. docs. 11 and 11-2] he alleged more specific complaints: inadequate clothing (prisoners provided only two pair of "old used" boxer shorts and T Shirts), inadequate hygiene supplies for indigent inmates, inadequate food portions (use of 6 inch ladles), unsanitary showers, and, the failure to use bleach when laundering prisoners' clothing. [rec. doc. 11-2, pp. 6-22]

In the June 17, 2009, motion for temporary restraining order [rec. doc. 13] he complained again that he was denied "sneakers" for recreation and faulted the defendants for failing to use bleach to clean the showers and prisoners' clothing. [rec. doc. 13]

Plaintiff is awaiting trial; nevertheless, he has previously been convicted of serious felony charges and has been sentenced to serve 45 years at hard labor in the custody of the LDOC. Therefore, for the purposes of this Report, plaintiff, though he awaits trial, may be considered a convicted prisoner.

A convict's complaints about prison conditions are analyzed under the Eighth Amendment. The Eighth Amendment does not prohibit all punishment; it does, however, prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation,

they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations.

As shown above, federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's claims concerning inadequate clothing are clearly baseless. Plaintiff has been provided clothing, and, although the clothing is old, it is apparently sufficient to protect him from the weather. Likewise, plaintiff's complaints about nutrition are conclusory at best. His complaints about the sanitary conditions and hygiene supplies likewise lack sufficient detail to establish that he is entitled to relief.

In short, plaintiff's conditions of confinement complaints are either conclusory or allege no injury. His claims, without more, simply do not rise to the level of cruel and unusual punishment as defined by the jurisprudence, because, with regard to each of these claims, plaintiff has not alleged that he sustained anything other than *de minimis* [4] harm or injury as a

---

[4] It has been suggested that "...an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would

result to his exposure to the complained of conditions.

In order to recover damages for exposure to dangerous conditions, a prisoner must show that he suffered an actual physical injury. See 42 U.S.C. § 1997e(e); compare *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir.2003, *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004). Plaintiff, at worst, was inconvenienced and not injured or otherwise harmed by the conditions complained of; these conditions cannot rationally be equated to "cruel and unusual punishment" since the deprivations alleged were not so extreme as to "... rise to a level that results in physical torture..." *Bradley v. Puckett*, 157 F.3d at 1025. Further, plaintiff has described no injuries and the injuries he has described are all *de minimis*, at worst. Plaintiff's Eighth Amendment conditions of confinement claims are frivolous.

### 4. Medical Care

In his original complaint plaintiff claimed that he received inadequate medical attention for dental problems that apparently manifested themselves in October 2008. According to plaintiff, he was examined by a dentist who referred him to an oral surgeon for extraction of his wisdom teeth. He was seen by another dentist at the Forcht-Wade Corrections Center in November 2008 and that dentist likewise referred plaintiff to an oral surgeon. [rec. doc. 1 and 1-3] In his Motion for Preliminary Injunction filed on May 27, 2009, plaintiff claimed only that he was denied adequate medical attention – he provided no details in support of that claim. [rec. doc. 10]

---

only home treatment suffice?" *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997). A more than *de minimis* physical injury, as defined by § 1997e(e) and the jurisprudence, "... is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *Id.*

In the amended complaint filed on June 9, 2009, plaintiff did not complain of any medical or dental problems. [rec. doc. 11] However, he provided a copy of a grievance dated March 26, 2009, in which, among other things, he complained, "I've been on the dental list to see an oral surgeon for 6 months and I still haven't seen a dentist. I've been subjected to pain and anguish because OCC refuses to let me visit a oral surgeon." [rec. doc. 11-2, pp. 8-9]

As in conditions of confinement cases, the constitutional right of a convicted prisoner to medical or dental care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

Thus, plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Plaintiff has not made such a showing.

As noted above, plaintiff has provided little in the way of detail concerning the nature and extent of his dental problems. He was specifically directed to do so, and, to provide a detailed description of the injury or pain associated with his alleged dental problems. The facts thus far alleged establish that plaintiff was examined by dentists in October and November 2008; that these doctors recommended extraction of plaintiff's wisdom teeth; and further recommended

oral surgery at the LSU Medical Center in Shreveport. In his ARP grievance, dated March 26, 2009, plaintiff admitted that he was on the list to see an oral surgeon and had been since the previous dental examinations.

Plaintiff's allegations simply do not support a claim of deliberate indifference since he has not shown that the delay in obtaining dental care can be fairly attributed to Sheriff Toney and Warden Newcomer.

## 5. Religion

In his original complaint, plaintiff alleged that OCC did not offer religious services for his chosen faith. However, he refused to identify his faith. Plaintiff has provided no factual or legal support for his practice of religion claim either in his original complaint or in any of the subsequent pleadings he filed. He was directed to provide information to support the claim and to address the issue of whether he had been deprived of all opportunities to practice his chosen faith.[5] [rec. doc. 7] He chose to ignore this order. Based on the foregoing, it must be assumed that

---

[5] As plaintiff was previously instructed, inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice? (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level? (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally? and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000).

Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

plaintiff has abandoned his interference with religion claim.

### 6. Grievances

In his original complaint, plaintiff alleged that OCC staff intentionally prohibited his grievances from reaching the Warden. Thereafter, in his motions seeking injunctive relief, plaintiff claimed that the grievance system was inadequate and prayed for an order directing the defendants to ensure an adequate grievance system. [rec. docs. 14 -15]

Plaintiff's claim is refuted by the exhibits tendered in conjunction with the amended complaint. [see rec. doc. 11-2] Plaintiff has provided copies of eight grievances submitted between November 2007 – March 2009. It appears that all of these grievances were considered and responded to by prison officials.

In any event, even if none of the grievances were considered, plaintiff failed to state a claim for which relief may be granted. The narrowing of prisoner due process protections announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); See also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not

suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substance right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Since plaintiff has no constitutionally protected right to a prison grievance procedure, his claim to the contrary is frivolous.

### 7. *Access to Courts/Interference with "Legal Mail"*

In his original complaint plaintiff faulted the OCC for providing an inadequate law library. According to plaintiff, he submitted a grievance to the prison administration and was told that since he was represented by counsel, he was not entitled to any further access. He also complained about an incident that occurred on August 10, 2008, when certain legal documents were removed from his cell. He also complained that on November 17, 2008, he received "legal mail" in an envelope that was unsealed.

In his "Motion to Seek Emergency Relief" filed in April 2009 plaintiff again alleged inadequacies in the OCC law library and interference on the part of the defendants who applied funds deposited in his prison account for legal supplies to defray the costs of this litigation. [rec. doc. 6] As noted above, this motion was denied on May 7, 2009. [rec. doc. 8]

Thereafter, in May 2009 plaintiff filed a Motion for Preliminary Injunction claiming that he was denied access to the law library and law books and that he was denied "legal copies" needed in order to communicate effectively with his court-appointed counsel. [rec. doc. 10]

In the amended complaint filed on June 9, 2009, plaintiff argued that had he been afforded access to an adequate law library when he was initially arrested and prosecuted on charges of second degree murder, armed robbery, aggravated burglary, and kidnapping, he could have forced the state to try him on all charges and not just the kidnapping charges. Thus, according to plaintiff, he would not be awaiting trial on the murder charges which are now pending in the Fourth Judicial District Court.

He then faulted OCC for failing to provide copying services, thus hindering plaintiff's ability to communicate with his court-appointed trial counsel. [rec. doc. 11-2] Further, plaintiff submitted a number of grievances that complained of interference with his mail, failure to provide notarial services, and problems with his inmate account. [Id.]

In the June 17 motion for TRO, plaintiff alleged that he was being denied access to the courts because the defendants were opening and reading his legal mail and because they failed to provide an adequate law library. [rec. doc. 13] Finally, in his July motion for a TRO, plaintiff alleged that the defendants confiscated documents needed for the defense of the criminal charges currently pending against him. [rec. doc. 14]

"A prison official's interference with a prisoner's legal mail may violate the prisoner's constitutional right of access to the courts. Additionally, such interference may violate the prisoner's First Amendment right to free speech- i.e ., the right to be free from unjustified governmental interference with communication." *Brewer v. Wilkinson*, 3 F.3d 816, 820, (5th

Cir.1993), *cert. denied*, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 39 (1994).

However, in order to state a claim based on delay or interference with the mail, or that the prisoner was denied his right of access to the courts, a plaintiff must show actual injury. See *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Plaintiff has simply shown no injury. He alleged that he was unable to adequately pursue a speedy trial argument when he was initially prosecuted, however, that claim is conclusory at best. Further, it is unclear how plaintiff can maintain that it was to his advantage to be tried on all of the pending charges at once.

Plaintiff has likewise shown no prejudice or actual injury resulting from the claimed interference with his mail, the prison's refusal to provide photocopying services, or even the loss of various legal documents following the shake downs in August 2008 and July 2009.

Finally, as previously noted, plaintiff is – and has been throughout this long period of prosecution – represented by court-appointed counsel. In *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir.1981) the Fifth Circuit held that in the absence of extraordinary circumstances, a criminal defendant represented by counsel does not have a constitutional right to file every *pro-se* motion he wants to file in addition to his attorney's motions. In *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir.1996) the Fifth Circuit held that an inmate who rejected the assistance of his court-appointed attorney 'had no constitutional right to access a law library in preparing the *pro-se* defense of his criminal trial.'

In other words, providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. See *Lewis v. Casey*, 518 U.S. 343, 350-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (relying on *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. 1491);

*Love*, 776 F.2d at 914. Thus, while prisoners like the plaintiff have a right to adequate, effective and meaningful access to the courts, access to a law library is only one of many constitutionally acceptable methods used to assure meaningful access to the courts. See *United States v. Taylor*, 183 F.3d 1199 (10th Cir.1999), *cert. denied* by *Taylor v. U.S.*, 528 U.S. 904, 120 S.Ct. 244, 145 L.Ed.2d 205 (1999).

Plaintiff has not been denied access to the courts. His claim is frivolous.

*8. Conclusion and Recommendation*

In short, each of plaintiff's claims are manifestly frivolous and dismissal on that basis is recommended. Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i);

**IT IS FURTHER RECOMMENDED** that all pending Motions for Injunctive Relief, Temporary Restraining Orders and for Appointment of Counsel  [rec. docs. 9, 10, 12, 15] be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

**conclusions accepted by the District Court, except upon grounds of plain error. See**

*Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).\_\_\_\_**

In Chambers, Monroe, Louisiana, July 15, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE